WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Kevin Jones, | No. CV-16-04433-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff's appeal of his denial of social security disability benefits. On appeal, Plaintiff raises two claims of error: 1) the Administrative Law Judge ("ALJ") did not give adequate reasons for discrediting Plaintiff's symptom testimony; and 2) the ALJ did not give adequate reasons for rejecting Plaintiff's six medical professionals' opinions.

## I. LEGAL STANDARD

The ALJ's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quotation omitted). "Substantial evidence" means more than a mere scintilla, but less than a preponderance. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). In determining whether

there is substantial evidence to support a decision, the Court considers the record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (citations omitted); *see Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see also Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g) (2012). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation and citation omitted).

Finally, the Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. Rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied on in support of those reasons. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

**II. DISCUSSION**

    **A. PLAINTIFF'S SYMPTOM TESTIMONY**

"Unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain her credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)

(citing *Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir. 1996)). In this case, Plaintiff argues that the ALJ was required to give clear and convincing reasons to reject the claimant's testimony about the severity of his symptoms. (Doc. 14 at 20). Defendant does not dispute that this is the governing legal standard. (Doc. 15 at 12).

In rendering a credibility determination, the ALJ may consider several factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284). If the ALJ relies on these factors and his reliance is supported by substantial evidence, the Court "may not engage in second-guessing." *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002)).

In this case, Plaintiff argues the ALJ erred in 8 ways. Some of the claimed errors are errors of fact, and some are errors of law.

### 1. Alleged Errors of Fact

#### a. Medical Evidence

Plaintiff does not dispute that legally Plaintiff's testimony being inconsistent with the medical record would be a clear and convincing reason to not fully credit his symptom testimony. Instead, Plaintiff argues that the ALJ failed to consider all of the medical evidence in this case in determining that Plaintiff's testimony was inconsistent with the medical evidence.

The ALJ discusses and cites significant medical evidence that is inconsistent with the severity of the symptoms Plaintiff claims. (Doc. 9-3 at 30-32).[1] Plaintiff seems to complain that were this Court to review the medical record de novo, there would be some doctors' notes that are more favorable to Plaintiff than the ALJ's three, single-spaced

---

[1] The page numbers are to this Court's record and not the administrative transcript.

- 3 -

page opinion on Plaintiff's symptoms recounts. Further, Plaintiff does not dispute that any of the ALJ's citations are correct; instead Plaintiff argues that there would be another way to view the evidence as a whole. However, this Court's function is not to re-weigh the evidence, and this Court cannot substitute its judgment for that of the ALJ. *Gallant*, 753 F.2d at 1453; *Batson*, 359 F.3d at 1193. Accordingly, the Court will not reverse the ALJ's consideration of the evidence on this point.

### b. Daily Activities

Plaintiff does not dispute that the ALJ correctly recounted his daily activities. Further, Plaintiff does not dispute that complex and robust daily activities can be a clear and convincing reason to believe that Plaintiff is exaggerating his limitations as they relate to working. Instead, Plaintiff argues that in recounting Plaintiff's daily activities, the ALJ failed to note that he performs some of them either inconsistently or with rest periods. However, Defendant notes that "Even where those activities suggest some difficulty in functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." (Doc. 15 at 16 quoting *Molina*, 674 F.3d at 1113).

Here, the ALJ noted that Plaintiff dresses independently, fosters 25 animals in his home, goes to the pet facility 1 to 2 times per week, and cooks easy meals. (Doc. 9-3 at 32). Plaintiff does not dispute these things but claims Plaintiff sometimes take breaks, or sometimes needs assistance putting on his shoes. While these additional limitations may be true, they do not change the ALJ's analysis that the number of activities Plaintiff told his physician in 2014 he was capable of performing regularly was inconsistent with the severity of the symptoms Plaintiff claims to have. Thus, the ALJ properly considered these facts.

Further, the ALJ noted that Plaintiff had acted as executor of his friend's estate in Pennsylvania, which required a long flight, with long periods of sitting, which was inconsistent with Plaintiff's claim that he must lay down for 2 hours in the morning and 2 hours in the afternoon. (Doc. 9-3 at 32). All of these activities, taken together, provide a

clear and convincing reason to discount Plaintiff's symptom testimony.

### c. Following Treatment Recommendations

Another reason listed by the ALJ for not crediting Plaintiff's symptom testimony is that Plaintiff failed to follow his doctors' treatment recommendation. Plaintiff does not dispute that failing to follow treatment recommendations is a clear and convincing reason to not fully credit his testimony. However, Plaintiff argues that, with respect to the recommendation that he have physical therapy, he did have timely physical therapy and the ALJ erred in factually concluding otherwise. (Doc. 14 at 25, n. 15).

The ALJ found that, "It also appears that [Plaintiff] was referred for physical therapy in April and July 2014, but the record shows no compliance with this recommendation." (Doc. 9-3 at 30-31). Citing nothing, Plaintiff argues that any delay or failure to obtain treatment was due to a lack of insurance coverage. (Doc. 17 at 25, n. 15). However, nothing in this record, or the record before the ALJ, factually supports this argument. Thus, the Court finds this bare assertion at the appellate level does not disprove the ALJ's finding at the agency level. Thus, this Court finds no factual error by the ALJ with respect to this finding.

### 2. Alleged Errors of Law

### a. Specificity of the Opinion

The ALJ found that Plaintiff's claimed symptoms were inconsistent with the medical record. (Doc. 9-3 at 30-32). Plaintiff does not dispute that Plaintiff's claimed symptoms being inconsistent with the medical record is a clear and convincing reason for the ALJ to not credit Plaintiff's symptom testimony. However, Plaintiff argues that as a matter of law, if the ALJ's analysis in this regard is not specific enough, then this reason is not clear and convincing.

After recounting Plaintiff's symptom testimony (Doc. 9-3 at 29-30), the ALJ spends 3 single spaced pages, citing over 50 exhibits, explaining how the medical record was inconsistent with Plaintiff's symptom testimony. The Court will not reproduce that portion of the ALJ's opinion in its entirety in this Order. However, by way of example,

the ALJ found:

> At the current hearing, the claimant testified that his biggest impediment to working full time is back pain....
> [S]ince the spinal fusion in June of 2009, the claim has...not needed additional surgery, had been encouraged by his orthopedist to <u>exercise</u>, has not been hospitalized for back pain, and his examinations have not shown significant functional deficits. This does not support an individual who is precluded from all work for a back impairment. Indeed, he was even able to return to work after his fusion, and there is no indication that his back impairment has significant[ly] worsened since he stopped working, and his orthopedist reported that the claimant "functions well" on this medications without adverse reaction [citation omitted].

(Doc. 9-3 at 30-31) (emphasis in original).

As the above quote exemplifies, the ALJ detailed how the medical record and Plaintiff's symptom testimony were inconsistent as to each alleged impairment. Thus, the Court rejects Plaintiff's claim of error that the ALJ's opinion was not specific enough.

### b. **Medical Record**

Plaintiff argues it was error for the ALJ to expect Plaintiff to have medical evidence to affirmatively support his symptom testimony. By way of example, the ALJ stated, "...although the claimant testified at the first hearing that he spends time each day lying down, the documentary evidence shows no such thing." (Doc. 9-3 at 32). Plaintiff appears to argue that it was error for the ALJ to have expected Plaintiff's symptom testimony to be corroborated by his doctors. (Doc. 14 at 24).

First, the ALJ did not deny benefits for this reason alone. Second, the ALJ noted that he found Plaintiff less credible because his symptoms that he testified to at the hearing never appear to have been reported to any of his doctors. The Court finds that the ALJ noting this discrepancy is not improper as a matter of law.

### c. **Combination of Symptoms**

Next Plaintiff argues it was error for the ALJ to consider his symptoms in isolation rather than in combination. (Doc. 14 at 20). While generally Plaintiff is correct that the ALJ must consider his impairments as a whole, the ALJ did so in this case. Specifically, the ALJ stated, "The undersigned has fully considered all of the foregoing conditions and evidence of any combined, related impact upon the claimant's level of functionality."

(Doc. 9-3 at 26-27). Further, the ALJ included limitations from a variety of impairments in determining Plaintiff's residual functional capacity. (Doc. 9-3 at 27). Thus, the Court finds the ALJ did not commit any error in this regard.

Moreover, in this section of his brief, Plaintiff appears to really be arguing that the ALJ should have weighted certain medical evidence higher than other medical evidence. (Doc. 14 at 20). As discussed above, it is the ALJ role to weigh the medical evidence and draw reasonable inferences therefrom, and this Court cannot substitute its judgment for the ALJ's decision. *Gallant*, 753 F.2d at 1453; *Batson*, 359 F.3d at 1193. Thus, the Court will not re-weigh the evidence.

Finally, Plaintiff takes issue with the fact that the ALJ recounted that Plaintiff's doctors categorized some of his symptoms as stable. (Doc. 14 at 22). Plaintiff argues that just because his symptoms were stable does not mean he is not disabled. However, in this case, the ALJ made this comment with respect to Plaintiff's cardiac condition. (*Id*.) To the extent Plaintiff's heart surgery stabilized any heart condition, the Court finds no error in the ALJ noting that the condition was stable (according to Plaintiff's doctors), and the Plaintiff's testimony to the contrary was given less weight.

### d. Smoking

In the context of noting that Plaintiff's claims regarding the severity of his breathing difficulties and heart condition were not credible, the ALJ noted that Plaintiff failed to follow his doctors' advice to quit smoking. On appeal, Plaintiff argues that as a matter of law, due to the addictive qualities of smoking, it was error to consider Plaintiff's failure to quit smoking as evidence of Plaintiff not following his doctor's advice. (Doc. 14 at 23) (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009)).

On this record it appears Plaintiff's doctors repeatedly advised him to quit smoking and Plaintiff made unsuccessful attempts to quit smoking. Thus, it appears the ALJ is correct that Plaintiff was not following his doctor's advice in full. However, like the ALJ in *Bray*, the ALJ in this case presented many other independent bases to discount

Plaintiff's testimony, and each is supported by the record. "Thus, the ALJ's reliance on [Plaintiff's] continued smoking, even if erroneous, amounts to harmless error." *Bray*, 554 F.3d at 1227.

### e. Motivation

Finally, Plaintiff argues it was error for the ALJ to consider Plaintiff's life circumstances as his true motivation for not working as a reason to discredit Plaintiff because the ALJ did not point to where in the record Plaintiff's motivations were inconsistent with his medical record. (Doc. 14 at 24). The Court finds no error in the ALJ considering Plaintiff's life circumstances as a basis for not finding him credible. By way of example in this case, the ALJ noted that Plaintiff was laid off from his last job (rather than ending employment due to a disability) and thereafter moved to Arizona where he claimed an inability to find a job in a specific field or an inability to do that specific work. All of these facts suggest Plaintiff's symptom testimony is not credible and it was not improper for the ALJ to consider them even though the ALJ did not point to any medical record related to this topic.

### 3. Conclusion

The Court finds the ALJ gave clear and convincing reasons supported by substantial evidence of record to not credit Plaintiff's symptom testimony. Further the ALJ did not commit any factual or legal in considering this evidence. Accordingly, the Court will not reverse the ALJ for failing to credit Plaintiff's symptom testimony in full.

### B. Plaintiff's Doctors' Opinions

Plaintiff claims the ALJ did not give adequate reasons for not fully crediting the opinions of five doctors and one physician's assistant. An "ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).

> Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002). However, the ALJ can reject the opinion of a treating physician in favor of the conflicting opinion of another examining physician "if the ALJ makes 'findings setting forth

specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" *Id.* at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

*Connert v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

Rather than argue whether the clear and convincing standard or the specific and legitimate standard applied to each doctor in this case, Plaintiff appears to advocate for a new standard for treating physicians. (Doc. 14 at 8). Specifically, Plaintiff argues that a treating physician's opinion "is entitled to controlling weight." (*Id.* at 7-8 (citing *Trevizo v. Berryhill*, 862 F.3d 987, 17-18 [*sic*] (9th Cir. 2017)). Defendant disputes that any new "controlling weight" standard was created by *Trevizo.* (Doc. 15 at 4). However, Defendant also does not take a position on whether the clear and convincing standard or the specific and legitimate reasons standard applies in this case.

First, the Court agrees with Defendant that *Trevizo* did not overrule the prior framework for reviewing ALJ decisions regarding the opinions of treating physicians. Accordingly, this Court will use the well-established framework. Second, because neither party has pointed to where the ALJ noted that a particular doctor's opinion was contradicted by another doctor, this Court will apply the clear and convincing standard to each doctor's opinions.

When reviewing an ALJ's determination, the Court must uphold an ALJ's decision—even if the ALJ could have been more specific in the opinion—if the Court can reasonably infer if and why the ALJ rejected an opinion. *Magallanes*, 881 F.2d at 755; *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.") (internal quotations omitted). Moreover, "if evidence exists to support more than one rational interpretation, [the Court] must defer to the [ALJ's] decision" *Batson*, 359 F.3d at 1193; *see also Osenbrock v. Apel*, 240 F.3d 1157, 1162 (9th Cir. 2001).

**1. Dr. Rene Lucas, M.D.**

Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Lucas. (Doc. 14

at 9). The ALJ gave 3 reasons for rejecting the limitations on Plaintiff to which Dr. Lucas opined: 1) Dr. Lucas's opinion was inconsistent with his own treatment notes; 2) Dr. Lucas's opinions were inconsistent the objective medical record which showed largely normal or benign findings; and 3) Dr. Lucas's opinion was based on Plaintiff's subjective reports. (Doc. 9-3 at 34).

Plaintiff does not appear to dispute that each of these three reasons, if supported by the record, would provide a clear and convincing reason for the ALJ to not give full weight to the opinion of Dr. Lucsa. Instead, Plaintiff seems to dispute the factual accuracy of the statements.

### a. Dr. Lucas's Own Treatment Records

With respect to Dr. Lucas's treatment records, Plaintiff argues that his treatment records do support his diagnoses and that the ALJ made a factual error in concluding otherwise. While neither party has cited the Court to the totality of Dr. Lucas's treatment records, the Court's review of the record shows that they span at least 50 pages. (*See e.g.* Doc. 9-10 at 60—9-11 at 50 (Tr. pages 716-764); Doc. 9-12 at 161-162 (Tr. pages 1061-1062); Doc. 9-8 at 92-96 (Tr. 519-523)). What the Plaintiff is requesting is that this Court review this record de novo and determine whether it agrees with the ALJ's findings as to Dr. Lucas's treatment history. However, as discussed above, this Court's role is not to reweigh the evidence and this Court cannot substitute its judgment for that of the ALJ. *Gallant*, 753 F.2d at 1453.

Moreover, even if this Court were to engage in this analysis, the Court agrees with the ALJ's determination that Dr. Lucas's findings, such as tenderness to palpation of the spine (which is the evidence Plaintiff cites to show Dr. Lucas's limitations and notes are consistent (Doc. 14 at 9)), do not support his limitation of sitting less than two hours and standing less than two hours in an eight hour day. Therefore, the Court finds the ALJ did not err in rejecting Dr. Lucas's opinion as being inconsistent with and unsupported by his own treatment notes.

### b. Objective Medical Evidence

The ALJ concluded that the severity of the limitations to which Dr. Lucas opined was entitled to only little weight because the limitations were inconsistent with the objective medical evidence, such as MRIs and physical examinations, which showed benign results. (Doc. 9-3 at 34). Plaintiff does not dispute that, legally, this reason is a clear and convincing basis to give little weight to Dr. Lucas's opinion.

In his brief, however, Plaintiff cites this Court to various medical literature which Plaintiff claims shows that a patient can have back pain even with latent symptoms. (Doc. 14 at 10). As discussed above, it is not this Court's function to reweigh the medical evidence, particularly not against new medical sources of expert opinions not found in the record before the ALJ. *Gallant*, 753 F.2d at 1453. Because the evidence in the record supports the ALJ's conclusion in this case, the Court finds no error.

### c. Reliance on Plaintiff's Self-Reported Symptoms

Plaintiff further claims it was error for the ALJ to discredit Dr. Lucas's opinion due to Dr. Lucas relying on Plaintiff's symptom reporting. In this circuit, it is permissible to discredit a doctor whose opinion is based on Plaintiff's self-reported symptoms if those symptoms have been properly discredited. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Plaintiff first argues that this is an inappropriate reason to discredit Dr. Lucas's opinion. (Doc. 14 at 12-13). However, legally this is a permissible reason and the Court will not reverse on this basis. Then, Plaintiff argues factually that the ALJ did not explain why he believes Dr. Lucas relied on Plaintiff's self-reporting of symptoms. (*Id*.). As discussed above, the Court has already concluded that Dr. Lucas's opinions were inconsistent with the objective medical evidence. Thus, the Court finds it was not error for the ALJ to conclude that, since Dr. Lucas's opinions were not supported by the medical evidence, they must have been based on Plaintiff's self-reports. Accordingly, the ALJ also did not err in this regard.

### d. Conclusion regarding Dr. Lucas

For all of the foregoing reasons, the Court finds the ALJ did not err in giving little

weight to Dr. Lucas's opinions regarding Plaintiff's limitations. Accordingly, the Court will not reverse the ALJ's decision on this basis.

**2.     Dr. Mason Roy, M.D.**

Plaintiff next argues that the ALJ erred in giving little weight to the opinion of Dr. Roy. Plaintiff primarily argues that the ALJ's rejection of Dr. Roy's opinions was legal error for the same reasons the ALJ's rejection of Dr. Lucas's opinions was error. (Doc. 14 at 13). For the reasons stated above, the Court finds no error.

The ALJ also rejected Dr. Roy's opinions because he is a primary care physician and not a specialist, and because he did not have a long term treating relationship with Plaintiff. (Doc. 9-3 at 34). Plaintiff argues that the ALJ committed legal error to consider either of these reasons.

Regarding a doctor's area of expertise, it appears that what the regulations permit the ALJ to consider and what the Ninth Circuit Court of Appeals permits the ALJ to consider in determining the weight to give an opinion are not exactly aligned. In *Lester*, the Court of Appeals stated that the treating physician was entitled to special weight, even for diagnoses outside his area of expertise, if the doctor was actually treating the condition. *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995). The Court of Appeals also stated that the treating physician's opinion as to the impact of the combination of all of a plaintiff's limitations was also entitled to special weight. *Id.* However, 20 C.F.R. § 404.1527(d)(5), allows the ALJ to consider the doctor's specialty when determining what weight to give the opinion. Because the ALJ considering the doctor's area of specialty is permitted by the regulations, the Court will not say it was legal error for the ALJ to do so.

Regarding the length of the doctor patient relationship, the ALJ stated a fact regarding the length of treatment. However, the ALJ did not state that for this reason he was not treating Dr. Roy as a treating physician. Accordingly, the Court finds no legal error by the ALJ stating a fact.

In his Reply, citing *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014), Plaintiff raises a further argument that it was legal error for the ALJ to reject Dr. Roy's

- 12 -

opinion because it was a check-box form. (Doc. 18 at 5). In other words, Plaintiff appears to be arguing that while the Ninth Circuit Court of Appeals historically has found a doctor completing only a check-box form without explanation to be a valid reason to give little to no weight to the doctor's opinion (s*ee e.g., Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)), *Garrison* overruled those cases. (Doc. 18 at 5).

However, what *Garrison* actually stated was, "[the ALJ] failed to recognize that the opinions expressed in check-box form in the February 2008 PFC Questionnaire were based on significant experience with Garrison and supported by numerous records, and were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit…." 759 F.3d at 1013. Thus, *Garrison* did not change the state of the law.

Here, the ALJ stated, "Indeed Dr. Mason [Roy] merely checked boxes on a form with little to no explanation." (Doc. 9-3). Even under *Garrison*, this is a further clear and convincing reason given by the ALJ to give little weight to Dr. Roy's opinions.

### 3. Drs. Andrew Atiemo, M.D. and Chris Geohas, M.D.

Plaintiff next argues the ALJ did not give adequate reasons for giving little weight to the opinions of Drs. Atiemo and Geohas. First, Plaintiff argues, "The ALJ found the cardiologists' opinions unsupported by objective data, but cited no specific record in support of the conclusion (Tr. 32)." (Doc. 14 at 15). Plaintiff is simply wrong about the breadth and specificity of the ALJ's opinion. For example, the ALJ states,

> Also, the limitation [found by Dr. Geohas] in the medical records that indicate that claimant can only ambulate for a half block due to back pain is given no weight (Exhibit 27). This is reported in the cardiologist's record and it appears to be a statement from the claimant and not an opinion of the physician (Exhibit 27). Further, it is not supported by any physical examination in the record.

(Doc. 9-3 at 34).

Accordingly, because Plaintiff's argument is proven untrue by the record, the Court rejects this claim of error on appeal.

Plaintiff goes on to argue that the ALJ improperly weighed the medical evidence.

- 13 -

(Doc. 14 at 15). However, as discussed above, it is not this Court's function to re-weigh the medical evidence and reach a de novo conclusion. *Gallant*, 753 F.2d at 1453. Because the ALJ's conclusions are supported by the record, the Court finds no error and will not reverse on this basis.

### 4. Dr. Sanjay Verma, M.D.

Similar to Plaintiff's arguments discussed above, Plaintiff again argues that the ALJ did not properly consider the medical evidence in discrediting the opinion of Dr. Verma. (Doc. 14 at 16). By way of example, before this Court Plaintiff argues without citation, "…individuals with diarrhea need not have hydration treatment." (*Id.*) Plaintiff further states without citation, "Weight loss and dehydration is not required as diarrhea does not equate to malnutrition." (*Id.*) As this Court has concluded above, it is not this Court's function to re-weigh the medical evidence. *Gallant*, 753 F.2d at 1453. All of the ALJ's conclusions with respect to Dr. Verma (Doc. 9-3 at 26) are supported by the record in this case.

Further, the ALJ's provided clear and convincing reasons for discrediting Dr. Verma, including: 1) that he provided only a check-box for with no explanation as to his conclusions; 2) that he relied only on Plaintiff's self-reported symptoms; 3) that his opinions were inconsistent with the objective tests that were unremarkable or negative, and 4) that Plaintiff's hearing testimony was less limiting that Dr. Varma's findings (Dr. Verma found Plaintiff had diarrhea five times per day, but Plaintiff testified to only one time per day and recently started taking fiber). (Doc. 9-3 at 26). *Molina*, 674 F.3d at 1111 ("[An] ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions.") (internal punctuation and citations omitted); *Ghanim*, 763 F.3d at 1162 (ALJ may discredit a doctor's opinion that is based on Plaintiff's properly discredited self-reported symptoms); *Ruckdashel v. Colvin*, 672 Fed.Appx. 745, 745-46 (9th Cir. 2017) (ALJ may reject a treating physician's opinion when it is contradicted by the objective medical evidence).

### 5. Physician's Assistant John Primak, PA-C

Generally, a nurse practitioner is not considered an "acceptable medical source" as defined by the applicable regulations. 20 C.F.R. § 404.1512; 20 C.F.R. § 404.1527(a)(2). The ALJ "may discount testimony from [non-medically acceptable treating sources] if the ALJ gives reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (internal quotation marks omitted) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).[2]

Here, the ALJ gave several reasons for giving Mr. Primak's opinions little weight. (Doc. 9-3 at 33). Specifically, the ALJ stated that Mr. Primak's opinions were inconsistent with his own treatment records, were based primarily on Plaintiff's self-reported symptoms, were conclusory, using a check-box form without explanation or reasoning for the extreme limitations opined, and were outweighed by the conflicting State agency physicians' opinions, which are acceptable medical sources. (*Id.*). While the ALJ did adopt some of Mr. Primak's opined limitations, the ALJ disregarded all of his legal conclusions (such as "meets a Listing"). (*Id.*) These reasons would be clear and convincing reasons to reject Mr. Primak's opinions if he were an acceptable medical source. Thus, the Court finds they are germane reasons for the ALJ to not fully credit Mr. Primak's opinions.

### 6. Conclusion Regarding Treating Medical Providers

This Court finds that the ALJ gave clear and convincing reasons, which were factually supported by the record, for rejecting each of Plaintiff's treating providers' opinions. Therefore, the Court will not reverse the decision of the ALJ on this basis.

/ / /
/ / /
/ / /
/ / /

---

[2] Because this case was filed before March 27, 2017, SSR 06-03p had not yet been rescinded.

## III. CONCLUSION

**IT IS ORDERED** that the decision of the ALJ is affirmed, and the Clerk of the Court shall enter judgment accordingly.[3]

Dated this 26th day of February, 2018.

James A. Teilborg
Senior United States District Judge

---

[3] To the extent a mandate is required, the judgment shall serve as the mandate.